THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT MONREAL, Defendant-Appellant.

First District (2nd Division)   Nos. 61615, 62308 cons.

Opinion filed September 28, 1976.

844

George C. Rantis, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Edward V. Vienuzis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Robert Monreal, was charged by indictment with the offenses of armed robbery and aggravated battery (Ill. Rev. Stat. 1971, ch. 38, pars. 12—4(b)(1) and 18—2). Upon a jury trial defendant was convicted solely of armed robbery and was sentenced to a term of confinement of 6-18 years in the Illinois State Penitentiary. From entry of the judgment of conviction defendant appeals contending (1) that he was denied his constitutional right to effective assistance of counsel; and (2) that the sentence imposed was excessive.

We affirm the judgment of the circuit court and the sentence imposed thereon.

A review of the record reveals that during the late evening hours of April 29, 1973, Edward Cunningham, a taxicab driver, had taken his passenger to his destination, and when he turned in his seat to collect the fare, his passenger seized this opportunity to produce a small, dark handgun and to relieve him of the day's receipts. Cunningham grabbed the gun and a struggle ensued during which it discharged resulting in injury to and partial loss of Cunningham's thumb. Having been subdued, Cunningham complied with the assailant's order to enter the rear seat of the cab and remove his trousers and shoes.

At about this time a vehicle drew alongside Cunningham's cab. Its operator spoke briefly with the assailant and then drove off. Cunningham noted the appearance of the vehicle and its license plate number. Within a few minutes thereafter the assailant fled with the proceeds of the robbery, his victim's trousers, a shoe and the ignition key.

Police officers arrived on the scene and were furnished a description of the assailant and the vehicle that had stopped, including its license number. An examination of the interior of the taxi led to the recovery of a .25 pellet and an expended shell casing.

Three days later, Cunningham, in the company of investigating officers, drove through the area where the robbery occurred and discovered an automobile that matched the description of the vehicle observed at the scene of the crime. Its owner, Orville Sandevul, testified that he had inadvertently been at the scene during the course of the armed robbery where he observed defendant, a man known to him for ten years, seated in the cab.

Based upon information supplied by Sandevul, the officers effected defendant's arrest the following day. Defendant was placed in a lineup and was positively identified by Cunningham as his assailant. Defendant was also observed to bear a small cut on his right hand at the vortex of the thumb and forefinger.

Upon questioning, defendant's wife provided the officers with a small caliber handgun which she indicated was owned by defendant. Cunningham positively identified this weapon as that wielded by defendant during the course of the robbery. Ballistics examination of the weapon established that it had discharged the pellet and shell casing recovered from the victim's cab. Moreover, according to the ballistics expert, defendant's weapon is so designed as to eject spent shell casings and position a live round in the evacuated chamber. He explained that if the weapon were held improperly when fired, an injury in the form of a minor laceration would result to the portion of one's hand between the thumb and index finger.

Defendant testified in his own behalf. He denied having robbed Cunningham or owning the gun recovered by police officers from his wife. Defendant's wife was not called to testify. Defendant attempted to establish as an alibi that he spent the evening in the company of his family and friends. To this end, he adduced the testimony of one such companion. Defendant's parents also testified as reputation witnesses. Defendant explained that the cut on his hand was incurred in the course of his employment.

It is within this factual setting that defendant now asserts that his representation at trial, though sufficiently able to secure his acquittal of the offense of aggravated battery, was otherwise constitutionally inadequate.

That a defendant in a criminal proceeding has a right to effective assistance of counsel cannot be doubted. While a defendant's right to assistance of counsel is not satisfied by the mere appearance of such an attorney, it is not expected nor does due process require that he prove infallible. (*People v. Teague* (1973), 15 Ill. App. 3d 479, 305 N.E.2d 80.) The constitutional requirements of adequate representation are not met only when the defendant demonstrates (1) actual incompetence of counsel, as reflected in the manner in which his attorney discharges his duties and (2) as a result of which defendant suffers actual prejudice, without which the outcome would have been different. (*People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416.) However, a review of counsel's competency does not extend to areas involving the exercise of judgment, discretion or trial strategy. *People v. Newell* (1971), 48 Ill. 2d 382, 268 N.E.2d 17.

This standard properly reflects the constitutional requirement of due process. Under all the foregoing criteria, an examination of the facts of the case at bar reveals that defendant was rendered effective assistance of counsel.

■■ Defendant's broad assertion that his trial counsel's knowledge of criminal law and procedure was lacking is not borne out by the record. Counsel extensively cross-examined each occurrence witness as to their ability to observe, reflect and recollect their perceptions of the incident in question. Wherever possible counsel endeavored to impeach such witnesses on the basis of prior statements made during defendant's preliminary hearing. Similarly, his cross-examination of the ballistics expert revealed an understanding of the technical nature of the subject matter.

■■ Counsel's familiarity with trial procedures and the rules of evidence are indicated by numerous and proper objections made by trial counsel throughout the course of trial proceedings. Defendant's specific claim that his attorney was unaware of the unconstitutionality of the alibi-

defense statute (Ill. Rev. Stat. 1969, ch. 38, par. 114—14) as enunciated in *People v. Fields* (1974), 59 Ill. 2d 516, 322 N.E.2d 33, is without merit. The record reveals that the prosecution never suggested that defendant's noncompliance with the statute should act as a bar to such witness' testimony. Defendant's attempt to adduce the testimony of his sole alibi witness was unopposed.

■■ Nor is there textual support for defendant's assertion that trial counsel failed to adequately prepare for trial in that he did not include certain individuals' names on his list of witnesses; called only one alibi witness; and failed to present a pretrial motion to suppress the weapon defendant's wife supplied investigating officers.

■■ Defendant's arguments are all predicated upon the assumption that the prospective "witnesses" would truthfully testify so as to corroborate defendant's alibi. However, the quality of that assumption may not be measured abstractly and without reference to the weight of the State's case. In this regard the evidence presented by the State was overwhelming. The victim positively identified defendant as the man who robbed him; Orville Sandevul, who knew defendant for ten years, testified that he observed him in a taxicab at the scene of the crime on the night of April 29, 1973; a .25 pistol was recovered from defendant's home a few days after the crime; the victim identified this weapon as the one used against him during the robbery; a .25 pellet and expended shell casing were recovered from the interior of Cunningham's taxi; ballistics evidence conclusively established the recovered pellet and casing were discharged from defendant's pistol; and defendant was injured in a manner indicative of an injury sustained during the course of the improper firing of the weapon.

Within this framework it cannot be said that defense counsel was unprepared. His cross-examination indicated a thorough familiarity with the facts of the case. Defense counsel introduced testimony which, if believed in light of the strength of the State's case, would require acquittal. One alibi witness was called to testify and served to partially corroborate defendant's alibi. However, given the consistency of the evidence marshalled against him, to suggest that other witnesses would accurately testify so as to completely substantiate defendant's fragile alibi is at best improbable and at worst a whisper from perjury.

■■ Defendant's complaint that trial counsel failed to include the name of a police evidence technician in counsel's list of witnesses thereby causing defendant substantial prejudice is unpersuasive. The officer's sole relationship to the case at bar was that he photographed the lineup from which defendant was positively identified as the assailant. The photograph was introduced into evidence and speaks for itself. Defendant offers no hint as to what value the officer's testimony would

bring to the jury's deliberations. In any case, such testimony could in no way bear upon any witness' account of defendant's participation in the offense, and its exclusion does not support a claim of prejudice. See *People v. Turner* (1975), 31 Ill. App. 3d 319, 333 N.E.2d 598 (abstract).

■■ ■ With regard to the allegation that defense counsel failed to timely file pretrial motions, it is well settled in Illinois that the decision as to whether to file such a motion is a matter of trial tactics and almost invariably has no bearing on the issue of competency of counsel. (*E.g., People v. Washington* (1968), 41 Ill. 2d 16, 241 N.E.2d 425.) Moreover, a review of the transcript of the preliminary hearing reflects an exhaustive and detailed account of the circumstances under which the gun was voluntarily provided by and recovered from defendant's spouse. Given such testimony a claim to suppress the evidence thus óbtained would have been frivolous. Defendant's contention that he did not own the weapon, alleged to have been recovered from his home, was fully presented to and rejected by the jury as trier of fact.

■■ Finally, defendant contends that his trial counsel failed to conduct himself in a professional manner before the court, thereby precipitating a citation for contempt. The alleged contemnacious conduct arises from several pretrial delays occasioned by counsel. He attempted to explain his absences as due to various illnesses. On one such occasion, the trial court ordered counsel examined by a physician appointed by the court. An examination was performed and on that physician's recommendation counsel's excuse was proven justified. There is no indication of record that judgment was entered on the finding of contempt. However, such pretrial misconduct, assuming it be found to exist, would not work to substantially prejudice defendant in the eyes of the jury. See *People v. Johnson* (1975), 26 Ill. App. 3d 1000, 326 N.E.2d 69.

■■ We are convinced that defendant's trial counsel adequately discharged his duties to defendant. We therefore conclude that in view of the totality of facts and circumstances of the case at bar, defendant received a fair trial and was rendered effective assistance of counsel. His allegations pertaining to incompetency of such counsel are unfounded and do not mandate reversal of his conviction for the offense of armed robbery.

■■ Defendant also challenges the sentence of 6-18 years imposed upon entry of the judgment as excessive. The Illinois Constitution of 1970, article I, section 11, mandates that a judicially imposed criminal sanction should be proportionate to the gravity of the offense and designed to return the offender to useful citizenship. We deem it now well settled that while a court of review may act to modify and reduce the sentence, this power is to be used sparingly and only employed where it clearly appears that the sentence constitutes a great departure from the fundamental

spirit of the law. (*People v. Reynolds* (1974), 23 Ill. App. 3d 317, 319 N.E.2d 114.) The sentence imposed was well within the statutory range established by the legislature for the offense of armed robbery. (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—8—1(b)(2) and (c)(2).) On the basis of the record before us we find no justification for modifying the sentence imposed by the trial court since such sentence is of sufficient indeterminancy to provide the possibility of rehabilitation while the maximum is clearly proportionate to the gravity of the offense.

For the foregoing reasons the judgment of the circuit court and the sentence imposed thereon is affirmed.

Affirmed.

DOWNING and JIGANTI, JJ., concur.